**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| Lee C. Keebler | ) | Bankruptcy No. 21 B 03589 |
| | ) | Chapter 7 |
| Debtor (s) | ) | Judge Timothy A. Barnes |
| _____ | ) | |
| Michael K. Desmond, Trustee | ) | Adversary No. 22 A 00001 |
| Plaintiff | ) | |
| v. | ) | |
| Lee C. Keebler and Pamela Keebler | ) | |
| Defendants | ) | |

**DEFENDANTS' PRETRIAL BRIEF**

The Debtor, Lee Keebler, owns his home at 7800 McVicker Avenue, Burbank, Illinois, with his wife, Pamela Keebler. Mr. and Mrs. Keebler purchased the home in October, 1984 as joint tenants, and have lived there ever since. At the time they purchased the home, Illinois did not have tenancy by the entirety as an available form of home ownership.

In early 2020, Mr. and Mrs. Keebler consulted with a bankruptcy attorney because Mr. Keebler had a substantial amount of debt. Mrs. Keebler was concerned, not only that her husband had a large amount of debt, but that he continued to spend money and incur additional debt. Mrs. Keebler met separately with Mr. Lloyd and learned that her husband could fund his spending by borrowing money and placing a mortgage on his half of the home, or even sell his half of the home, without her participation and even without her knowledge. She asked what she could do to protect the home from his future borrowing and was referred to a real estate lawyer. The Debtor did not participate in this meeting, and his testimony is that he executed the deed at his wife's direction, without any understanding of the import of the deed. The evidence will show that the Debtor had <u>no</u> intent to hinder, delay, or defraud creditors, only to meet the desires of his wife.

In June, 2020, Mr. and Mrs. Keebler transferred ownership of the home to themselves, from joint tenancy to tenancy by the entirety. Mrs. Keebler was the driving force behind the transfer, as she was justifiably concerned that her husband's spending and borrowing would continue, and could result in his mortgaging their home to support his spending. Nine months later, Mr. Keebler filed this Chapter 7 case. The Trustee filed an objection to the Debtor's claim of exemption based on tenancy by the entirety on June 11, 2011, and filed this adversary proceeding on January 4, 2022.

### Adversary Proceeding-Avoidance of Transfer

The Trustee's complaint contains three counts seeking avoidance of the transfer: Count I seeks to defeat the protection of tenancy by the entirety under 735 ILCS 5/12-112 under the avoiding powers available to the Trustee under 11 U.S.C. §544(b); Count II alleges actual fraud under 11 U.S.C. §548(a)(1)(A); and Count III alleges constructive fraud under 11 U.S.C. §548(a)(1)(B). Counts IV and V seek the recovery and sale of the home.

The Trustee and Defendants agree that the Trustee must show that the Debtor transferred the property into tenancy by the entireties "with the sole intent to avoid the payment" of existing debts. The Trustee's position was set forth in his Response to Defendants' Motion for Summary Judgment, at p.6, first full paragraph. The Trustee also conceded in his Response, at p.13, final paragraph, that Counts II and III, referring to 11 U.S.C. §548(a)(1)(A) and §548(a)(1)(B), are "Unnecessary," and that the Trustee pleaded such counts in the alternative merely to avoid a motion to dismiss premised upon a plaintiff's failure to cite the Illinois Fraudulent Transfer Act.

The State of Illinois adopted tenancy by the entirety in 1990; prior to that time, Illinois landowners did not have tenancy by the entirety available to them. In 1995, the Illinois legislature clarified the protection of tenancy by the entirety by adopting Public Act 89-438, codified as 735

ILCS 5/12-112, which provides that "Any real property…held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due." Public Act 89-438 provides that it is declarative of existing law.

Public Act 89-438 was adopted to resolve an issue that had arisen: whether the Illinois Fraudulent Transfer Act, 740 ILCS 160, could be used by a creditor or bankruptcy trustee to avoid a transfer from joint tenancy to tenancy by the entirety. Section 160/5(a)(1) of the Act provides that a transfer is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor." The legislature adopted P.A. 89-438 to make it clear that the "actual intent" standard of the Fraudulent Transfer Act does not apply to transfers to tenancy the the entirety; that the higher "sole intent" standard applies.

The Illinois Supreme Court has held that the Illinois Fraudulent Transfer Act does not apply to transfers to tenancy by the entirety. "The sole intent standard of the amended tenancy by the entirety provision is substantially different from the actual intent standard of the Fraudulent Transfer Act. The sole intent standard provides greater protection from creditors for transfers of property to tenancy by the entirety. Under the sole intent standard, if property is transferred to tenancy by the entirety to place it beyond the reach of the creditors of one spouse *and* to accomplish some other legitimate purpose, the transfer is not avoidable. Such a transfer, however, would be avoidable under the actual intent standard, which only requires any actual intent to defraud a creditor. The General Assembly, by adopting the sole intent standard, has made it clear that it intends to provide spouses holding homestead property in tenancy by the entirety with greater

3

protection from the creditors of one spouse than that provided by the Fraudulent Transfer Act. Accordingly, the Fraudulent Transfer Act's actual intent standard is not to be used to avoid transfers of property made to tenancy by the entirety." Premier Prop. Mgmt., Inc. v. Chavez, 191 Ill. 2d 101, 110–11, 728 N.E.2d 476, 482, 245 Ill. Dec. 394, 400, 2000 WL 190332 (2000).

The Trustee, acknowledging Illinois law, does not seek to avoid the transfer under the Fraudulent Transfer Act, 740 ILCS 160, but seeks a holding that the Debtor and his wife transferred their home from joint tenancy to tenancy by the entirety "with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due," as that provision is used in 735 ILCS 5/12-112.

The evidence will not show that the Debtor had any actual intent to avoid the payment of existing debts. Rather, Mr. Keebler was deferring to his wife's decision-making in transferring the property. He did not take part in the telephone meeting with Mr. Lloyd (Pamela Tr. p.21) at which tenancy by the entireties was discussed. After that meeting, Mrs. Keebler discussed the proposed transfer with Mr. Keebler, and it was only after this discussion that the couple decided to transfer the property (Pamela Tr. pp.36-37). It was Mrs. Keebler who spoke to the real estate lawyer, Thomas Dalton, and retained him (Lee Tr. pp.29-30). The Debtor did not even know the purpose of the meeting, except to sign papers (Lee Tr. p.29). He does not know, to this day, the significance of the transfer (Lee Tr. p.28). The Debtor was not planning to file bankruptcy at the time of the transfer (Pamela Tr. p.38) and the possibility of filing bankruptcy did not have an impact on the couple's decision to transfer the property (Pamela Tr. p.38).

The Debtor's intent in going to the appointment that his wife had set up, and had paid for, with a lawyer that his wife had met with by telephone, to sign documents that his wife had

4

requested, was to do what his wife wished, which was to protect herself from his potential improvidence. While it is true that, as the Trustee alleges, a court can infer an intent from the actions of a debtor, the evidence will not show that the Debtor knew that one result of his actions was to avoid payment of his existing creditors. Even if the Court can infer an intent to avoid paying existing creditors, this was not the Debtor's sole intent, which is necessary for the Trustee to defeat the state-law protection of tenancy by the entireties.

Mrs. Keebler led the process of obtaining the deed and can testify as to the events surrounding the transfer and this bankruptcy. To the extent that her reason for the transfer is relevant, Mrs. Keebler has testified, and will confirm at trial, that she was concerned that the Debtor would continue to spend and borrow, and that he had the potential of mortgaging or even selling his share of the property to raise money for <u>future</u> spending. She was worried, not about the effect of the real estate in bankruptcy, but about his future decisions, and testified at her deposition that she could not longer trust him to make decisions in the best interest of himself and his family. It was on this basis, and not in consideration of bankruptcy, that Mrs. Keebler went with her husband to a real estate lawyer to get the property placed in tenancy by the entirety.

The Trustee has not produced, and cannot produce, any evidence to contradict Mrs. Keebler's statement about her need to protect the home against future debt. The Trustee cannot show that her intent, or the Debtor's "sole intent," was to avoid paying existing debt. Defendants are entitled to judgment under Count I.

In Count II, the Trustee alleges that the transfer should be avoided as actually fraudulent under Section 548(a)(1)(A) of the Bankruptcy Code, which provides that a transfer may be avoided if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or

defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."

This provision is nearly identical to the operative provision of the Illinois Fraudulent Transfer Act, 740 ILCS 16/5(a)(1), "with actual intent to hinder, delay, or defraud any creditor of the debtor." The tenancy by the entirety statute provides the same protection against a trustee seeking to use Section 548(a)(1)(A) as it does against a creditor or trustee seeking to use the Illinois Fraudulent Transfer Act.

In 2020, a bankruptcy court in this district confirmed that the protection of the "sole intent" standard as to tenancy by the entirety was greater than the protection of the "actual intent" standard. Citing the Premier Property case, Judge Lynch held that "The 1997 amendment makes clear that intent is relevant to tenancy by the entirety protection, but only to the extent that 'the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due.' 735 ILCS 5/12-112. It appears that the [Premier Property] Court was concerned that the fraudulent transfer statute's 'actual intent' standard provides less 'protection from creditors for transfers of property to tenancy by the entirety' than the exemption statute." In re Paulsen, 623 B.R. 747, 752, 2020 WL 6929437 (Bankr. N.D. Ill. 2020).

In In re Allard, 196 B.R. 402, 408–10, 1996 WL 271978 (Bankr. N.D. Ill. 1996), aff'd sub nom. Great S. Co. v. Allard, 202 B.R. 938, 1996 WL 711251 (N.D. Ill. 1996), the court cited an Illinois case, E.J. McKernan Co. v. Gregory, 268 Ill.App.3d 383, 205 Ill.Dec. 763, 643 N.E.2d 1370 (2d Dist.1994), *appeal allowed,* 161 Ill.2d 525, 208 Ill.Dec. 358, 649 N.E.2d 414 (1995), *dismissed with prejudice,* No. 78487 (May 23, 1995), which had held that a creditor may not

6

proceed under the Illinois Fraudulent Transfer Act. The <u>Allard</u> court held, "The [McKernan] court stated that because transfer to tenancy by the entirety is authorized by the Illinois statute, it was not fraudulent for the debtor to have transferred his property to tenancy by the entirety…The court noted that '[t]here are no limitations or qualifications on the use of the tenancy, other than the real property be held by a married couple during coverture and that the property be the couple's 'homestead'." <u>Allard</u>, 196 B.R. at 409.

Illinois law provides that a creditor or trustee may not seek to avoid a transfer to tenancy by the entirety under the Illinois Fraudulent Transfer Act, and, as the "actual fraud" standard of Section 548(a)(1)(A) is virtually the same as that of the Illinois Fraudulent Transfer Act, neither may a trustee seek to avoid the transfer under Section 548(a)(1)(A). In <u>In re Werner</u>, 401 B.R. 797, 806, 2009 WL 960014 (Bk., N.D. Ill. 2009), the court held that "It is the standard elucidated in this statute [735 ILCS 5/12-112], rather than in the state *or federal* fraudulent transfer statutes, that determines whether a transfer of property into tenancy by the entirety may be avoided." (Emphasis added.) While <u>Werner</u> involved an adversary proceeding brought by a creditor under the Illinois Fraudulent Transfer Act, the court recognized that the "sole intent" standard in the tenancy by the entirety statute is higher than the "actual intent" standard in both the state and federal fraudulent transfer statutes.

The Trustee's claim under "constructive fraud," in Count III, cannot succeed because constructive fraud may not be used to avoid transfers of property from exempt to non-exempt status.

> To hold under the facts here, that constructive fraud has been proved, would permit the trustee to recover every exempt asset converted from a nonexempt asset by an insolvent debtor. That result would run contrary to the firmly embedded and longstanding bankruptcy policy that permits debtors to convert nonexempt property into exempt

7

> property in order to maximize the exemptions to which they are entitled. *In re Stern,* 345 F.3d 1036 (9th Cir.2003), *cert. den.* 541 U.S. 936, 124 S.Ct. 1657, 158 L.Ed.2d 356 (2004); *Smiley,* 864 F.2d at 565; *Matter of Reed,* 700 F.2d 986, 990 (5th Cir.1983). The rationale underlying that rule is obvious. Given the minimal nature of exemption allowances in many jurisdictions, it would be a harsh result to deny debtors the right to convert property into allowable exempt property in order to effectuate the fresh start that the bankruptcy law is designed to insure. *Reed,* 700 F.2d at 990.

In re Dunbar, 313 B.R. 430, 438, 2004 WL 1879889 (Bankr. C.D. Ill. 2004).

Applying Illinois law, the protection of tenancy by the entirety are sufficient to defeat the Trustee's claims under Count II, employing the "actual fraud" standard, because Illinois law does not make property in tenancy by the entirety available to creditors or trustees unless the "sole purpose" was to defraud creditors, and the evidence will show that the Debtor's interest in transferring the property was to abide by his wife's decision, and her purpose for the transfer was to protect the family from the debtor's future ability to transfer the property.

Should the Court bypass the protections of Illinois law and the requirement that the "sole purpose" of the transfer be to defraud creditors, the Trustee still has not advanced any evidence that the Debtor had an actual intent to hinder, delay, or defraud creditors. The testimony of both the Debtor and his wife will be that Mrs. Keebler was the sole person who made the decision to transfer the property; and that Mr. Keebler agreed with his wife but did not understand the purpose of the transaction—and does not understand it to this day. Mrs. Keebler's concern was not to protect the property from existing creditors of the Debtor, but to protect the family home from future actions of the Debtor, including the possibility of borrowing money and placing a mortgage on the home. Bankruptcy did not enter into the decision at all, as Mrs. Keebler has testified.

Counts IV and V seek the recovery and sale of the home. As the Trustee does not have

the right to avoid the transfer to tenancy by the entirety, and as the Trustee has not alleged that there are any joint debts, the Trustee does not have the right to recover or sale the property, and Defendants should have judgment on Counts IV and V.

### Objection to Exemption

In bankruptcy, rights and protections as to property are governed by state law. "In assessing this question, we begin with an important stage-setting observation: Even in the uniquely 'federal' bankruptcy context, '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *accord, e.g.*, *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (observing that, as a general matter, 'property' and 'interests in property' are 'creatures of state law'). Particularly significant for present purposes, this Court has emphasized that although 'whether an interest of the debtor[ is property of the estate is a federal question,' 'the nature and existence of the debtor['s] right to property is determined by looking to state law.' *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989)." In re Northington, 876 F.3d 1302, 1310, 2017 WL 6276001 (11th Cir. 2017).

State and federal law favor liberal use of exemptions, and pre-bankruptcy planning is not fraudulent.

> The burden lies with the Trustee to prove a fraudulent transfer claim by a preponderance of the evidence. *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009). Judy contends that the actions of the Debtors were pre-bankruptcy exemption planning and therefore the transfer of the vehicle title cannot be avoided because such planning is not fraudulent, but rather permissible. "The general rule which has emerged from the decisional law is that mere conversion of property from non-exempt to exempt status on the eve of bankruptcy does not establish fraud." *In re Beckman*, 104 B.R. 866, 869 (Bankr. S.D. Ohio 1989). See *In re Wadley*, 263 B.R. 857, 859-60 (Bankr. S.D. Ohio

2001) ("[C]onversion of non-exempt assets into exempt assets does not, by itself, establish fraud." The court explained, through a review of legislative history, that "[e]ven if a debtor converts the assets with the intent to place them beyond the reach of creditors, the debtor's intent cannot be fraudulent because it is in line with the very purpose of exemptions.").

In re Wyman, 626 B.R. 480, 495–96, WL 1084252 (Bankr. S.D. Ohio 2021).

The Illinois statute on the tenancy by the entirety exemption, 735 ILCS 5/12-112, is the source of the "sole intent" requirement. The statute, also cited above, provides that "Any real property…held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due."

The same standard of "sole intent" is required to invalidate the Debtor's exemption claim as to avoid the transfer in the adversary proceeding. The Debtor did not the the sole intent to avoid paying existing creditors when he and his wife transferred the property, and the exemption is valid.

WHEREFORE Defendants pray for judgment in their favor on all counts in the adversary proceeding, and that the Trustee's Objection to Exemptions be denied.

    Respectfully submitted,
    Lee and Pamela Keebler


    By:__/s/ David P. Lloyd__
        Their attorney


David P. Lloyd, Ltd.
615B S. LaGrange Rd.
LaGrange IL  60525
708-937-1264

Fax: 708-937-1265