UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>Lee C. Keebler,<br><br>    Debtor. | Case No. 21bk03589<br><br>Chapter 7 |
| Michael K. Desmond, not individually, but as Chapter 7 Trustee for the bankruptcy estate of Lee C. Keebler,<br><br>    Plaintiff,<br>v.<br><br>Lee C. Keebler and Pamela Keebler,<br><br>    Defendants. | Adv. No. 22ap00001<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION[1]

This matter comes on for consideration on the Trustee's Objection to Debtor's Exemption [Dkt. No. 15][2] (the "Exemption Objection") brought by Michael K. Desmond (the "Trustee"), in his capacity as trustee for the bankruptcy estate of Lee C. Keebler (the "Debtor") in the underlying bankruptcy case, and the Complaint to Avoid and Recover Fraudulent Transfer and for Other Relief [Adv. Dkt. No. 1] (the "Complaint") filed by the Trustee in the above-captioned adversary proceeding (the "Adversary"). The matter also comes for consideration on the Trustee's Post-Trial Motion to Reopen Proof for Limited Purpose of Allowing Court to Take Judicial Notice [Adv. Dkt. No. 54] (the "Motion to Reopen"), filed by the Trustee in the Adversary after the conclusion of the trial on the Complaint and the Exemption Objection. The Exemption Objection, the Complaint and the Motion to Reopen are all opposed by the Debtor. The Debtor's spouse, Pamela Keebler

---

[1]    This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate order will be entered pursuant to Bankruptcy Rule 9021.

[2]    References to docket entries in this adversary proceeding will be noted as "Adv. Dkt. No. ___." References to docket entries in the underlying bankruptcy case, *In re Lee C. Keebler*, Case No. 21bk03589 (Bankr. N.D. Ill. filed March 19, 2021) (Barnes, J.), will be noted as "Dkt. No. ___."

("Pamela" and together with the Debtor, the "Defendants"), also opposes the Complaint and the Motion to Reopen.

As described in more detail herein, the Complaint at bar seeks relief in five counts, the first four sounding in avoidance and recovery of the Debtor's prepetition transfer of his homestead from joint tenancy to tenancy by the entirety. In the fifth count, the Trustee seeks authority to sell that homestead under section 363(h) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

For the reasons more fully set forth below, upon review of the parties' respective filings and after conducting a trial on July 10, 2023 (the "Trial"), to resolve the Exemption Objection and the Complaint, the court finds that the Trustee has carried his burden on the first of the four counts of the Complaint. As the transfer will be avoided, the Trustee's Exemption Objection is now well supported and will be sustained.

At the conclusion of the Trustee's case in chief at the Trial, however, the Defendants orally moved for a judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure (the "Civil Rules" and as to each, "Civil Rule __"), made applicable to this matter by Bankruptcy Rule 7052, on all counts of the Complaint. After some consideration, that oral motion was denied with respect to the first four counts, but was granted with respect to the fifth count—the Trustee's request to sell Pamela's interest in the Defendants' home. At the Trustee's request, the court delayed entry of judgment in the matter for the Trustee to seek to rectify the deficiency. The Trustee's attempt to rectify the situation was the Motion to Reopen, which will be granted, in part. However, even with the additional evidence in the record, the Trustee's request to sell Pamela's interest in the Defendants' home still fails to satisfy the required elements of section 363(h).

As a result, judgment will be entered in favor of Trustee on the first four counts of the Complaint and the Exemption Objection will be sustained. Judgment will be entered in favor of the Defendants on the fifth count—the Trustee's request to sell Pamela's interest in the Defendants' home.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court judge may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court

2

judge may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

There are three matters that are before the court for determination—the Exemption Objection, the Complaint and the Motion to Reopen. The court must find that it has jurisdiction and authority to determine all of the matters independently.

An objection to a debtor's claim of exemption in a bankruptcy case is listed as a core matter. 28 U.S.C. § 157(b)(2)(B). "The court also has constitutional authority to determine the exemption because, even though the exemption may derive from state law, '[t]he right to exempt property from the bankruptcy estate is established by an express provision of the Bankruptcy Code (section 522) and is central to the public bankruptcy scheme.'" *In re West*, 507 B.R. 252, 254–55 (Bankr. N.D. Ill. 2014) (Barnes, J.) (*quoting In re Carlew*, 469 B.R. 666, 673 (Bankr. S.D. Tex. 2012) *aff'd sub nom. W. v. Carlew*, Case No. CIV.A. H–12–0913, 2012 WL 3002197 (S.D. Tex. July 23, 2012)).

Avoidance and recovery of a fraudulent transfer are available under alternate theories under 735 ILCS 5/12-112 (made applicable by section 544 of the Bankruptcy Code) or sections 548(a)(1)(A) or (a)(1)(B) of the Bankruptcy Code and are a core matter under 28 U.S.C. § 157(b)(2)(F) in which this court has constitutional authority to enter final orders. *KHI Liquidation Trust v. Wisenbaker Builder Services, Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 906–08 (Bankr. N.D. Ill. 2012) (Barnes, J.) (analyzing history of fraudulent transfer claims and finding that they "have bankruptcy law as their source").

Under section 363(h), a trustee may sell a co-debtor's interest in real property in which the estate also holds an interest. As such an action is a core proceeding, 28 U.S.C. §§ 157(b)(2)(N) and (O), and stems from the Bankruptcy Code, a bankruptcy court judge has authority to enter final orders. *Doyaga v. Markisich (In re Markisich)*, 655 B.R. 670, 674 (Bankr. E.D.N.Y. 2023).

A motion to reopen the evidentiary record after the close of trial to allow the court to take judicial notice under Fed. R. Evid. 201(c), made applicable to the Adversary by Fed. R. Bankr. P. 9017, relates to the substantive claims upon which the trial was held (which, per the above, the court has jurisdiction, statutory authority and constitutional authority to hear and determine), is a matter of administration and is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Further, a bankruptcy court judge has inherent authority of the management of trials of which they have constitutional

3

authority to hear and determine. *Rybolt v. Carrington Mortgage Services, LLC* (*In re Rybolt*), 550 B.R. 422, 424 (Bankr. N.D. Ind. 2016) (*citing Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984)).

More importantly, no party has contested the jurisdiction or authority of this court in entering final orders in these matters. Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Exemption Objection, the Complaint and the Motion to Reopen.

BACKGROUND

In many ways, this case is a relatively straightforward one. The Trustee brought an avoidance and recovery action and an objection to exemptions predicated on the success of that action. After a one-day trial, the Trustee prevailed—but not entirely. In other ways, this is a cautionary tale about communicating with the court a party's intentions and how not to proceed to trial with unvoiced presumptions forming the basis of the approach.

The matter before the court centers around the Debtor's homestead, namely 7800 McVicker Avenue, Burbank, IL 60459 (the "Property"). On March 19, 2021 (the "Petition Date"), when the Debtor filed for bankruptcy relief under chapter 7 of the Bankruptcy Code, *see* Voluntary Petition for Individuals Filing for Bankruptcy (Official Form 101) [Dkt. No. 1] (the "Petition"), the Debtor included the Property on Schedule A/B as being held in tenancy by the entirety by the Defendants. Petition, Schedule A/B: Property (Official Form 106A/B), at ¶ 2.1. The Debtor scheduled a 100% exemption in the Property under 735 ILCS 5/12-112, Petition, Schedule C: The Property You Claim as Exempt (Official Form 106C) (the "Schedule C"), at ¶ 2, and scheduled Wells Fargo Home Mortgage as holding a $15,300.00 mortgage against the Property as of the Petition Date. Petition, Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), at ¶ 2.1. Last, the Debtor disclosed on his Statement of Financial Affairs that he had transferred the Property from joint tenancy to tenancy by the entirety in June 2020 (the "Transfer"), less than a year before the Petition Date. Petition, Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107), at ¶ 18.

Based on the Debtor's disclosures and the Trustee's examination of the Debtor at the meeting of creditors required under section 341 of the Bankruptcy Code, the Trustee filed the Exemption Objection seeking to deny the Debtor's claim of 100% exemption in the Property on the grounds that the Transfer was avoidable under 735 ILCS 5/12-112. The Trustee alleged that the Transfer was made with the sole intent to defraud creditors. Exemption Obj., at ¶¶ 7–14. At the initial hearing on the Exemption Objection, the court entered a briefing schedule pursuant to which the Debtor filed the Response to Objection to Debtor's Exemption [Dkt. No. 21] (the "Exemption Response") wherein the Debtor denied that his sole intent for the Transfer was avoid payment of existing debts. Instead, the Debtor argued that there were several purposes for the Transfer, namely that:

> [t]he transfer was prompted by a concern of the Debtor's spouse that, notwithstanding the Debtor's ability to pay debts on a current basis, the Debtor's spending might lead to financial problems in the future; the spouse's concern that the Debtor might seek to borrow money against the property; the Debtor's agreement that protection of the property in the future was a wise decision; and,

4

finally, by advice from a real estate attorney as to the benefits of tenancy by the entirety for future financial and estate planning.

Exemption Resp., at p. 2. Through the course of multiple hearings on the Exemption Objection, the court allowed the Trustee and the Debtor to conduct discovery regarding the Transfer.

The Trustee filed the Complaint on January 4, 2022. In the Complaint, the Trustee seeks five counts of relief (the "Counts" and as to each, "Count __"):

| | |
|---|---|
| Count I: | Avoidance of the Transfer as fraudulent under 11 U.S.C. § 544(b) and 735 ILCS 5/12-112; |
| Count II: | Avoidance of the Transfer as actually fraudulent under 11 U.S.C. § 548(a)(1)(A); |
| Count III: | Avoidance of the Transfer as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B); |
| Count IV: | Recovery of the avoided Transfer under 11 U.S.C. § 550; and |
| Count V: | Sale of Property, including Pamela's interest, under 11 U.S.C. § 363(h). |

Following the Debtor filing an answer to the Complaint and an unsuccessful motion for summary judgment, the court scheduled the Exemption Objection and the Complaint for trial. Trial Scheduling Order [Dkt. No. 46] (scheduling the Exemption Objection for trial); Trial Scheduling Order [Adv. Dkt. No. 40] (scheduling the Complaint for trial); Order Modifying Trial Schedule [Adv. Dkt. No. 41] (amending the trial schedule). Other than as discussed below, at no point in the scheduling of the Trial did the court limit the matters set for trial, nor did the Trustee expressly communicate to the court that he was only seeking a trial on any subset of the issues raised in the Exemption Objection or the Complaint. The orders governing the Trial indicated that the Trial was to address the Complaint and the Exemption Objection, with no limitation as to the scope of the Trial.

The Trial took place on July 10, 2023. The Trustee examined Thomas Dalton ("Dalton"), the attorney that prepared the documents to effectuate the Transfer, regarding his knowledge as to the Debtor's intent of the Transfer. Tr. at pp. 27–45. The Trustee also examined the Debtor, *id.* at pp. 46–70, and Pamela, *id.* at pp. 73–129, with respect to the Debtor's intent of the Transfer. Following the Trustee's examination of those three witnesses, the Trustee rested his case. *Id.* at p. 131. Immediately thereafter, the Defendants orally moved for judgment on partial findings under Civil Rule 52(c). *Id.*

The Trustee and the Defendants orally argued the Defendants' request, *id.* at pp. 132–44, whereafter the court adjourned proceedings briefly to determine the request. After the adjournment, the court returned with questions for the parties. The court asked both parties to address multiple questions with respect to the standards for relief under Counts I–III to avoid the Transfer. *Id.* at pp. 145–59. When the court began to question the parties with respect to Count V, the court cautioned the parties that it was torn due to the fact that the Trustee did not have to bring Count V at this point, but that the Trustee had proceeded to trial on it without any court-ordered reservation or, frankly, any indication at all that the Trustee intended to abandon the claim. *Id.* at

p. 159.  The Trustee responded by arguing he has done so in reliance upon a previous ruling of this court on similar terms.  *Olsen v. Paulsen (In re Paulsen)*, 640 B.R. 147 (Bankr. N.D. Ill. 2022) (Lynch, J.), *aff'd in part, appeal dismissed in part sub nom. Paulsen v. Olsen*, Case No. 3:22-CV-50111, 2023 WL 8019393 (N.D. Ill. Nov. 20, 2023), *reh'g denied sub nom. Paulsen v. Olsen*, Case No. 3:22-CV-50111, 2023 WL 8451819 (N.D. Ill. Dec. 6, 2023).

In *Paulsen*, Judge Lynch considered a case with issues very similar to the present case and ruled that a request to sell property under section 363(h) could be brought after trial on an action to avoid a transfer in the same property, even after proceeding to trial on that count but being unprepared to try it to conclusion.  The Trustee argued that he had relied on *Paulsen* and that *Paulsen* was the right result, as the Trustee couldn't market the Property until the Transfer was avoided.  The Trustee therefore asked the court to hold ruling on Count V in abeyance or dismiss it without prejudice.  Tr. at p. 160.  Following much further argument, the court found that the Trustee had proceeded to trial on the Complaint in its entirety, without any court-ordered narrowing of issues or indication that Count V was abandoned, had tried his case to conclusion and rested.  In so doing, the Trustee did not provide any evidence to address the elements of section 363(h).  As a result, the court indicated that the Defendants' motion for judgment on partial findings would be granted as to Count V of the Complaint, but declined to enter judgment as to the other Counts until the close of evidence.  *Id.* at pp. 172–73; *see also* Fed. R. Civ. P. 52(c) ("The court may ... decline to render any judgment until the close of the evidence.").

At that point the Defendants took the stand in their own case, Tr. at pp. 173–88, the parties presented their closing statements, *id.* at pp. 189–204, and the court took the remainder of the matter under advisement.  *Id.* at 204.

Eight days later, before the court had entered judgment on the Complaint or had ruled on the Exemption Objection, the Trustee filed the Motion to Reopen.  The Motion to Reopen asks the court to reopen the Trial so as to allow the Trustee to provide additional evidence as to Count V.  The court thereafter ordered a briefing schedule with respect to the Motion to Reopen and, once that briefing was complete, took the Motion to Reopen under advisement alongside the Exemption Objection and the Complaint.  Order Scheduling Motion to Reopen and Thereafter Taking Motion Under Advisement [Adv. Dkt. No. 57].

This Memorandum Decision constitutes the court's ruling on the matters before it.  In taking up the Exemption Objection, the Complaint and the Motion to Reopen, the court has considered the arguments of the parties at the Trial and the hearings on the Motion to Reopen, and has reviewed and considered the following filed documents relating to the Motion:

(1)     The Exemption Response;

(2)     Defendants' Answer [Adv. Dkt. No. 5] (the "Answer");

(3)     Trial Scheduling Order [Adv. Dkt. No. 40] (the "Pretrial Order");

(4)     Defendants' Pretrial Brief [Adv. Dkt. No. 47];

(5)     Joint Pretrial Statement [Adv. Dkt. No. 48];

(6)      Plaintiff Trustee's Pretrial Brief [Adv. Dkt. No. 49];

(7)      Defendants' Response to Plaintiff's Motion to Reopen Proofs [Adv. Dkt. No. 58] (the "Response to Motion to Reopen"); and

(8)      Reply of Trustee in Support of Post-Trial Motion to Reopen Proofs for Limited Purpose of Allowing Court to Take Judicial Notice [Adv. Dkt. No. 59] (the "Reply in Support of Motion to Reopen").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing.  Though these items do not constitute an exhaustive list of the filings in the Adversary or the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at \*2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

MOTION TO REOPEN

The court first addresses the Motion to Reopen as it affects the scope of the evidence before the court.

A.      Applicable Law and Burdens

The Motion to Reopen is largely silent on what legal authority permits the court to reopen proceedings at this stage and how the facts in this case support such a reopening.  Having been afforded a trial on his Complaint, the Trustee presented his case and rested.  He did so without abandoning Count V or addressing either his perception of the case law governing Count V or the contradictory nature of the Joint Pretrial Statement, each discussed in more detail below.

As a result, the court is left to determine the law applicable to the Trustee's request and whether the facts of this case support the relief requested.  This should not be the case.[3]

Nonetheless, as best as the court can determine after conducting its own research, the case law surrounding a motion to reopen a trial after its conclusion[4] only provides that granting such

---

[3]      "It is not the Court's responsibility to find arguments, facts, and supporting case law for the parties." *Sanders v. JGWPT Holdings, Inc.*, Case No. 14 C 9188, 2016 WL 4009941, at \*11 (N.D. Ill. July 26, 2016).  Instead, it is the "advocate's job ... to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).  "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F.Supp.2d 984, 985 (N.D. Ill. 2010) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 508 (N.D. Ill. 2011) (summarizing the foregoing).

*In re Ace Track Co., Ltd.*, 556 B.R. 887, 903 (Bankr. N.D. Ill. 2016) (Barnes, J.).

[4]      The majority of the case law surrounding a motion to reopen concern a request to reopen a bankruptcy case under section 350 or to reopen removal proceedings under 8 U.S.C. § 1229a(c)(7).

request is within the discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 331 (1971); *Swartz v. New York Cent. R. Co.*, 323 F.2d 713, 714 (7th Cir. 1963); *Ditter v. Yellow Cab Co.*, 221 F.2d 894, 899 (7th Cir. 1955) (*citing Gardner v. United States*, 71 F.2d 63, 64 (9th Cir. 1934)).

Given that there are other mechanisms for handling a trial gone awry, *see*, *e.g.*, Fed. R. Civ. P. 59; Fed. R. Civ. P. 60, and given that an error in admitting evidence by a party is not generally grounds for a new trial, Fed. R. Civ. P. 61, the court views such motions as being exceptional and disfavored.[5]

As to a new trial, Civil Rule 59(a)(1), which is titled "Grounds for New Trial," may be applicable and states in pertinent part that:

> The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>
> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a)(1).

> " 'A motion for a new trial in a nonjury case ... should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.' " *Quality Leasing Co., Inc. v. Int'l Metals LLC*, Case No. 1:18-cv-1969-TWP-MG, 2021 WL 4193546, at *2 (S.D. Ind. Sept. 15, 2021) (*quoting* 11 Charles Alan Wright *et al.*, Federal Practice & Procedure § 2804). "A manifest error is not demonstrated by the disappointment of the losing party; instead, it is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

*Murphy v. Richert*, Case No. 15 CV 8185, 2021 WL 4963604, at *3 (N.D. Ill. Oct. 26, 2021), *aff'd sub nom. Murphy v. Richert*, Case No. 21-3203, 2023 WL 2200963 (7th Cir. Feb. 24, 2023). The court must therefore find that some substantial reason exists to grant the Motion to Reopen.

In this case, the Trustee has made no such argument. The Trustee has not argued that he was forced to make his request to sell the Property in the Complaint, that he requested and was denied an opportunity to bifurcate a trial on the Complaint, that he was denied the opportunity to take discovery with respect to the elements of section 363(h) prior to the Trial or that he was denied the opportunity to address the same elements at the Trial.

---

[5]      The Trustee's request, in fact, is substantially similar to that in *Swartz*, where "Plaintiff asked to reopen his case after having rested and after the trial judge had indicated that the motion for directed verdict would be granted." When asked as to what evidence could be produced if proofs were reopened, the plaintiff stated that they would produce more specific evidence. The Seventh Circuit upheld the trial court's denial to reopen evidence. *Swartz*, 323 F.2d at 714.

8

The only reasons given by the Trustee's substantive arguments for reopening are his reliance on how a similar matter was handled by another judge in *Paulsen*, the contents of the Joint Pretrial Statement and the nature of judicial notice. The court will address each of the Trustee's arguments in turn.

B.     *Paulsen* and the Trustee's Ability to Market the Property

The Trustee apparently based a large portion of his trial strategy on the handling of a similar matter by another judge of this court in *Paulsen*. In *Paulsen*, Judge Lynch held a combined trial on a chapter 7 trustee's objection to the debtors' exemption in property held in tenancy by the entirety and an adversary complaint that sought to avoid the transfer of the same property to being held in tenancy by the entirety. 640 B.R. at 149–50. As in this case, the plaintiff in *Paulsen* also sought a sale under section 363(h). After the debtors and others testified, Judge Lynch entered judgment in the trustee's favor on his request to avoid the transfer and his objection to their exemption based on the property being held in tenancy by the entirety. Judge Lynch, however, wrote only four sentences in addressing the trustee's request to sell the property:

> Here, the Trustee concedes that he has no actual proposal to buy the Ringwood property. Thus, it is not possible at this time for the court to determine whether the benefit to the estate of a sale outweighs the detriment to the co-owners. As such, the Trustee's request in Count III is premature. Judgment on that count therefore will be entered in the Defendants' favor but without prejudice to a future action to sell the property.

*Paulsen*, 640 B.R. at 165.[6] No reasons or authority are given as to why the court entered judgment "without prejudice to a future action to sell the property" when the court had gone to trial on the request, but it is clear from the record in *Paulsen* that Judge Lynch was not presented a motion for judgment on partial findings after the plaintiff there had rested his case. The *Paulsen* case does not, therefore, provide definitive guidance to the court in this case. As rulings by different judges of the bankruptcy court are nonbinding outside of the matter in which ruled, the Trustee's reliance on *Paulsen* is misplaced. *Paulsen* provides no support for the conundrum faced by the Trustee in this case.

To be clear, the Trustee's argument that the court should not enter judgment in the Defendants favor on a final basis because the Trustee could not market the Property and thus could not satisfy section 363(h) at the Trial has no support in the record. If the Trustee had a need to

---

[6]     After the conclusion of the Trial in this case, the District Court issued an opinion deciding an appeal from the debtors in the *Paulsen* case. *Paulsen v. Olsen*, Case No. 3:22-CV-50111, 2023 WL 8019393, at *6 (N.D. Ill. Nov. 20, 2023). In that decision, the District Court affirmed *Paulsen* in all respects but one. On that issue, the question of whether a count can be deferred as was done there, the debtors argued on appeal that the bankruptcy court erred in entering judgment without prejudice because that left the trustee "apparently free to try again and again" even though the parties had "actively litigated the merits of the Count in a contested trial." *Id.* at 7. Rather than addressing that argument, however, the District Court found that it "does not have jurisdiction to review the judgment" as it was dismissed without prejudice and not a final order subject to appeal. *Id.*

bifurcate proceedings, he should have acted accordingly or brought the request to sell the Property under section 363(h) when he was ready to proceed on it.

An argument not raised at trial or a failed trial strategy is an improper basis for a motion to reopen. *In re Winer*, 39 B.R. 504, 512 (Bankr. S.D.N.Y. 1984). The court finds no grounds to grant the Motion to Reopen under *Paulsen* or the Trustee's argument that he could not address Count V until he could market the Property.

C.        The Joint Pretrial Statement's Stated Disputes

The Trustee also argues that the court should grant the Motion to Reopen as the Joint Pretrial Statement's only stated dispute was with respect to the standard of intent to avoid a fraudulent transfer. Mtn to Reopen, at p. 5. In his pretrial brief and his argument at the Trial, the Trustee made no attempt to address Count V, the standards of section 363(h) or how any stipulated facts supported that he was entitled to judgment in his favor. At the Trial, the Trustee seemed to be concerned only with his request to avoid the Transfer.

While that may be the case, both the Answer and the Joint Pretrial Statement make clear that the Defendants refute that the Trustee is entitled to sell the Property. *See* Answer at ¶¶ 50–53; Joint Pretrial Stmt, at p. 4 (Defendants' Theories of Defense). While it is true, as the Trustee alleges, that the Joint Pretrial Statement supersedes the pleadings, *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443 (7th Cir. 1995), the Joint Pretrial Statement does not clearly foreclose the Defendants' ability to defend Count V.[7]

Further, the limitation of stated disputes in the Joint Pretrial Statement does not satisfy the Trustee's required burdens with respect to elements that he must prove in order to be entitled to relief. Absent stipulated facts that address the elements of relief sought by the Trustee, the narrowing of stated disputes leaves a gap that the Trustee should have addressed at the Trial in order to satisfy his burden to relief. The Trustee did not close that gap.

True, the Joint Pretrial Statement is, however, internally contradictory (not listing Count V facts as material facts in dispute, while simultaneously presenting a defense for the Defendants on Count V) and the Defendants' defense as presented in the Joint Pretrial Statement as to Count V is less than fulsome. Both of these factors militate in the Trustee's favor. However, the Trustee provides the court with no rubric for addressing the issues with the Joint Pretrial Statement other than to rule in his favor on the Motion to Reopen.

As the burden of proving section 363(h)(1)–(4) rests on the Trustee, *Brown v. Phillips* (*In re Phillips*), 379 B.R. 765, 795 (Bankr. N.D. Ill. 2012) (Squires, J.), and because the Trustee could easily, before resting, either have abandoned Count V or have responded to the Defendants' clear attempts

---

[7]       It was also clear during the course of the Defendants' counsel's cross of the Defendants during the Trustee's case in chief that the Defendants were refuting the elements of section 363(h). Tr. at pp. 108–09. The Trustee did not object to those questions, though it was clear that they were addressed at Count V and not within the scope of his questioning on direct. It is difficult to see how the course of the evidence adduced at the Trial could have prejudiced the Trustee so as to prohibit an amendment to the pleadings to conform with the evidence given. *See, e.g.*, Fed. R. Civ. P. 15(b). The witnesses who could have established the elements of section 363(h) were present and available to answer questions if asked.

10

to defend the elements of section 363(h) during their cross-examinations on his case in chief but did neither, the Trustee's argument that the Joint Pretrial Statement should be read in his favor is not well taken. Further, should the court endorse the Trustee's arguments on this matter, the result would be chaotic. It would allow parties to routinely take a second bite at trials after resting based on their own, unvoiced presumptions. As the Joint Pretrial Statement did not foreclose a defense of Count V, the Trustee had an obligation to either prosecute or abandon that Count.

The internal contradictions in the Joint Pretrial Statement are thus insufficient on their own for the court to grant the Motion to Reopen.

D.      Judicial Notice

Judicial notice is governed by Rule 201 of the Rules of Evidence, which creates a permissive standard for judicial notice and clearly allows the court to take judicial notice "at any stage of the proceeding." Fed. R. Evid. 201(d); *Loftus v. FDIC*, 989 F.Supp.2d 483, 490 (D.S.C. 2013) ("Under Rule 201(d), a court may take judicial notice of a fact at any stage in the proceeding, even for the first time on appeal. *See* Fed. R. Evid. 201(f) advisory committee note.").

A court may take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice, by its express terms, is limited to adjudicative facts. Just because, for example, a document exists as a matter of public record does not necessarily qualify it for judicial notice because, as the Seventh Circuit has pointed out, depending on its use, "its provenance maybe disputed. Is it authentic? *See* Rules 901 to 903." *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). Further, judicial notice, as noted above, is discretionary in nature. *Olson v. Bemis Co., Inc.*, 800 F.3d 296, 305 (2015).

In the Motion to Reopen the Trustee asks that the court take judicial notice of five matters with respect to Count V: (i) a mortgage recorded by Citifinancial Services, Inc., in November 2007 against the Property; (ii) an assignment of the same mortgage from Citifinancial Services, Inc., to Wells Fargo Bank, N.A., in June 2010; (iii) a release of the same mortgage in November 2021; (iv) that the Property is a single-family residence occupied by the Defendants and would realize significantly less for the estate than the sale of only the Debtor's interest; and (v) that the Property is a single-family home not used in the production, transmission or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power. Mtn to Reopen, at pp. 5–6.

The Defendants filed their Response to Motion to Reopen arguing that "not all of the topics on which Plaintiff seeks to have the Court [take] judicial notice [of] are proper subjects of judicial notice." Resp. to Mtn to Reopen, at p. 1. The Defendants concede that the first four matters that the Trustee seeks to have the court take judicial notice of—the recorded mortgage documents and that a sale of the Debtor's interest only would realize less than a sale of both of the Defendants' interests in the Property—are proper matters for judicial notice and thus the court need not determine whether the Motion to Reopen is proper as to those matters. *Id.* The Defendants dispute the ability of the court to take judicial notice of the last matter—that the Property was not used for the production of electricity or gas as this is not a fact that is "generally known within the trial court's territorial jurisdiction." *Id.* at p. 5.

11

As to this final point, the court agrees with the Defendants. Whether a particular property is used for the production of electricity or gas is not a fact that is generally known in this District. The court is, in fact, at a loss for how such a fact would be ascertained by the court. Would a home with solar panels that produce electricity that is added back into the electrical grid qualify, and if it does, is the Property such a home? There is no case or evidence cited by the Trustee for his assertion as to the Property's use with respect to production of electricity or gas. The court therefore cannot take judicial notice that the Property is not used in the production of electricity or gas.

To summarize, the court will exercise its discretion and grant the Motion to Reopen in part so as to take judicial notice of the four matters undisputed by the Defendants. In all other respects, the Motion to Reopen will be denied. With the resolution of the Motion to Reopen, the evidentiary record is complete in this matter.

FINDINGS OF FACT

After review of the evidence presented at the Trial and the filings in this Adversary and the above-captioned bankruptcy case, including those facts arising out of the background of this case and including the matters that the court has agreed to take judicial notice of pursuant to its ruling on the Motion to Reopen, the court determines the salient facts to be and so finds as follows:[8]

1.   The Defendants have owned the Property since October 12, 1984. Joint Pretrial Stmt, Stipulation of Facts at ¶ 3.

2.   Prior to June 18, 2020, the Property was held in joint tenancy. *Id.*

3.   The Property was encumbered by a mortgage first held by Citifinancial Services, Inc., and then assigned to Wells Fargo Bank, N.A. That mortgage was released in November 2021. Mtn to Reopen, at pp. 5–6; Resp. to Mtn to Reopen, at p. 1.

4.   The Debtor was the only party obligated on the mortgage. Tr. at p. 82.

5.   The Defendants did not attempt to take out any further mortgages with respect to the Property. *Id.* at p. 78.

6.   Pamela has managed the Defendants' finances since 1984. *Id.* at pp. 69–70.

7.   The Defendants have no wills and no estate plan. *Id.* at pp. 63, 75.

8.   The Defendants first met with the Debtor's bankruptcy counsel, David Lloyd ("Lloyd"), in March 2020. *Id.* at pp. 57, 76.

---

[8]   Adjudicative facts may also be found and determined throughout this Memorandum Decision. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

12

9.      The Debtor does not recall[9] if Lloyd advised him to transfer how he and Pamela held title to the Property. *Id.* at 62.

10.     In the Defendants' first meeting with Lloyd, Pamela had a side meeting with Lloyd while the Debtor used the restroom, which meeting Pamela testified took place because she was concerned about the Debtor's spending. *Id.* at pp. 102–05. Lloyd informed Pamela that Dalton could transfer how they held title to the Property to protect her half interest in the Property. *Id.* at pp. 85–86, 102–05.

11.     Pamela thereafter called Dalton to inform him how the Defendants wanted to hold title to the Property. *Id.* at pp. 89–90.

12.     The Defendants hired Dalton to effectuate the Transfer via a deed. Joint Pretrial Stmt, Stipulation of Facts at ¶ 11; Tr. at p. 29. Dalton completed no other legal tasks for the Defendants. Joint Pretrial Stmt, Stipulation of Facts at ¶ 11–12; Tr. at p. 30. Dalton remembers nothing about the meeting with the Defendants and does not remember how they had been referred to his practice or why they were transferring how they held title to the Property. Tr. at pp. 29–45.

13.     Similarly, the Debtor does not remember his meeting with Dalton, signing the deed that effectuated the Transfer or the purpose of the Transfer. *Id.* at pp. 59–60, 66.

14.     The Debtor remembers that there were medical debts and student loans that the Debtor was unable to pay at the time of the Transfer. *Id.* at p. 62.

15.     On June 18, 2020, the Defendants transferred their interests in the Property from joint tenancy to tenancy by the entirety via the Transfer. The Debtor received no consideration for the Transfer. Joint Pretrial Stmt, Stipulation of Facts at ¶ 4; Tr. at p. 39.

16.     The Defendants, their two children and two of their grandchildren live in the Property. Tr. at p. 108. The children and grandchildren do not contribute to the household expenses. *Id.* at p. 109.

17.     If the Property was sold, the Defendants and their family would be devastated because they could not afford another home "like this" and they could not qualify for a mortgage. *Id.*

18.     A sale of the Debtor's interest only in the Property would realize significantly less than a sale of both of the Defendants' interest in the Property. Mtn to Reopen, at pp. 5–6; Resp. to Mtn to Reopen, at p 1.

---

[9]      Much of the Debtor's testimony is that he does not recall events. The Debtor explained early in his testimony that he had a stroke in early 2023. Tr. at p. 48. Upon cross examination, the Debtor also informed the court that he had a prior stroke six years earlier. *Id.* at p. 70.

13

DISCUSSION

As the court said in the Trial, the Exemption Objection follows the Complaint.  The Property is currently held and was held as of the Petition Date by the Defendants in tenancy by the entirety.  If nothing changes, the Exemption Objection is not well taken.  However, if the Transfer is avoided and title to the Property reverts to its original ownership condition, the Exemption Objection is well taken.  Thus, the court must determine the Complaint first.

The court will, therefore, address each count of the Complaint—first addressing the applicable law and burdens before determining judgment.  Following that, the court will consider how the outcome of the Complaint affects the Exemption Objection.

A.    The Complaint

1.    *Counts I, II and III—Avoidance of the Transfer as Fraudulent*

Counts I, II and III of the Complaint all seek the same relief and are pled in the alternative.  They all seek to avoid the Transfer as fraudulent under different theories.

In Count I, the Trustee argues that the Transfer is fraudulent under Illinois law, 735 ILCS 5/12-112, available to the Trustee under section 544.  Section 544 grants the Trustee the rights and powers to avoid a transfer that a creditor would have under state law.  11 U.S.C. § 544(a)(1).  Under Illinois law, a property held in tenancy by the entirety cannot be sold to satisfy the judgment of a debt held by only one tenant unless such transfer was done "with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due."  735 ILCS 5/12-112.

In Count II, the Trustee argues that the Transfer is actually fraudulent under section 548(a)(1)(A).  Section 548(a)(1) allows the Trustee to avoid the Transfer within two years of the Petition Date under certain circumstances.  The Trustee will succeed on Count II if he can prove that the Transfer was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  11 U.S.C. § 548(a)(1)(A).

In Count III, the Trustee argues that the Transfer is constructively fraudulent under section 548(a)(1)(B).  The Transfer will be avoided if the Trustee proves that the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. § 548(a)(1)(B).

(a)    The Applicable Intent Standard

The parties throughout the litigation (including as far back as the briefing of the Exemption Objection) have been focused on whether the Trustee is able to satisfy the language of 735 ILCS 5/12-112 and prove that the Debtor's sole intent in the Transfer was to hinder or delay creditors.  The only stated material fact in dispute in the Joint Pretrial Statement is "[w]hether the sole intent of the Debtor in transferring the Property into tenancy by the entirety was to avoid the payment of his debts existing at the time of the transfer beyond the Debtor's ability to pay those debts as they became due."  Joint Pretrial Stmt, at p. 9.

At the Trial, the court asked the parties about how this sole intent standard came into play, if at all, regarding Counts I through III, as the parties seemed almost solely focused on it. It appeared as if the Defendants were proceeding as if only Count I was at issue.

In response, the Defendants argued that the Trustee is only allowed to obtain relief under Count I or Count II if the Trustee can prove that the sole intent of the Transfer was to first undo the tenancy in entirety condition of the Property and that the only way to undo that condition was through 735 ILCS 5/12-112. To put a finer point on it and as more fully articulated by the Defendants in their pretrial brief, the Defendants assert that as the Illinois Supreme Court has held that the Illinois Fraudulent Transfer Act does not apply to transfers to tenancy by the entirety, the sole intent standard of 735 ILCS 5/12-112 must be applied to any transfer of Illinois real property to tenancy in the entirety. Defendants' Pretrial Brief, at pp. 3–4 (*citing Premier Prop. Mgmt., Inc. v. Chavez*, 728 N.E.2d 476, 482 (Ill. 2000).

In support the Defendants rely on *Paulsen*. In *Paulsen*, the bankruptcy court applied the sole intent standard under 735 ILCS 5/12-112 to avoid a transfer of property to tenancy by the entirety. 640 B.R. at 154. The *Paulsen* decision does not, however, stand for the proposition that the sole intent standard must be applied to any request to avoid a transfer of Illinois real property into tenancy by the entirety. That issue was simply not addressed in the published opinion.

More on point is Judge Hollis's decision in *Harris Bank v. Werner* (*In re Werner*), 410 B.R. 797 (Bankr. N.D. Ill. 2009) (Hollis, J.), where she stated that "[i]t is the standard elucidated in this statute [735 ILCS 5/12-112], rather than in the state or federal fraudulent transfer statutes, that determines whether a transfer of property into tenancy by the entirety may be avoided." *Id.* at 806.

While each of these decisions are of interest, they are persuasive only and neither case addresses in detail whether a trustee may also use section 548 to avoid a transfer of property. The court is not, therefore, persuaded that the Trustee must prove the higher standard of sole intent with respect to the Transfer or that the court may only award relief under Count I.

Put another way, the question begged by the Defendants' position is whether Illinois law can eliminate relief available to a bankruptcy trustee under the Bankruptcy Code by mandating that a higher standard of fraud[10] is required to avoid a transfer. This speaks to preemption.

"'Preemption can take on three different forms: express preemption, field preemption, and conflict preemption.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 651–52 (7th Cir. 2015) (*quoting Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008)). "Conflict preemption can occur in two situations: (1) when 'it is impossible for a private party to comply with both state and federal requirements,' or (2) when 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Bible*, 799 F.3d at 652 (*quoting Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). While property interests are created under state law, *Butner v. United States*, 440 U.S. 48, 54–57 (1979), 735 ILCS 5/12-112 does not appear to create or alter a property right. Instead, it narrows a state law remedy. Such a limitation should not be read as to limit a similar but independent federal remedy. If the court were

---

[10]   All parties agree that the sole intent standard in 735 ILCS 5/12-112 would be a higher burden for the Trustee to prove rather than the general intent standard of section 548(a)(1)(A) or where no intent is required under section 548(a)(1)(B).

to adopt the argument articulated by the Defendants, Illinois law would stand as an obstacle to execution of the Bankruptcy Code as written by Congress as it would remove two sources of avoidance power that Congress gave to bankruptcy trustees. The court will not adopt such an argument.[11]

As a result, the Trustee is not prohibited by the Illinois "sole intent" standard under 735 ILCS 5/12-112 from pursuing federal remedies as pled in Counts II and III. The court will, therefore, consider each of the Counts. Satisfaction of any of Counts I, II or III will end the inquiry in the Trustee's favor.

        (b)      <u>Count I</u>

To obtain avoidance under 735 ILCS 5/12-112, the Trustee must prove that the Debtor's sole intent with respect to the Transfer was to avoid debts existing at the time of the Transfer by a preponderance of the evidence. *Paulsen*, 640 B.R. at 157. As most debtors will not admit such a fraudulent intent, a bankruptcy court must usually infer the requisite intent for a fraudulent transfer based on circumstantial evidence, including the testimony of witnesses. *In re Sheridan*, 57 F.3d 627, 634 (7th Cir. 1995).

In this case, there was very little testimony from the Debtor regarding his intent with the Transfer. Much of the Debtor's testimony was that he did not recall. At the same time, while Pamela's intent with respect to the transfer was the topic of much scrutiny, her intent is not relevant under 735 ILCS 5/12-112. It is the Debtor's intent with respect to the Transfer that is germane.

Has the Trustee proven that the Debtor's sole intent was to defraud his medical and credit card creditors when he completed the Transfer? The Trustee points the court to the sequence of events—the Defendants met with Lloyd, Lloyd directed the Defendants to Dalton to complete the Transfer, the Debtor then filed for bankruptcy with the Property as his sole asset and the Trustee unable to reach the Property because it was held in tenancy in the entirety. The history of the Defendants holding title in joint tenancy for over 30 years, the effect of the Transfer (to shield the Property from a bankruptcy trustee), the failure of the Debtor to attempt to pay his creditors using the equity in the Property, followed by the Debtor's subsequent bankruptcy and no assets to pay any debt—is sufficient for the court to conclude that the Debtor's intent with respect to the Transfer was to shield the Property from collection to satisfy his debts. The Trustee has therefore presented a compelling case of circumstantial evidence in his favor.

In each of *Paulsen* and *Werner* the trustee did the same. In both cases, however, the court then considered whether evidence of estate planning[12] on the advice of counsel was sufficient to overcome the otherwise compelling case that the "sole intent" standard had been met. In *Werner*,

---

[11]     *See Holliday v. K Road Power Mgmt, LLC* (*In re Bos. Generating LLC*), 617 B.R. 442, 479 (Bankr. S.D.N.Y. 2020), *aff'd sub nom. Holliday v. Credit Suisse Sec. (USA) LLC*, Case No. 20 CIV. 5404 (GBD), 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021) (holding that the Bankruptcy Code preempted state law regarding intentional fraudulent transfer claims).

[12]     While the Debtor offered no explanation for the Transfer, Pamela repeatedly argued that the Transfer was for estate planning purposes and to protect herself from debts that the Debtor may incur. In this case, however, there has been no estate plan created. No wills or trusts have been created for the Defendants.

16

the court found that the timing of the transfer was suspicious, but nonetheless that the debtor's explanation regarding the transfer was credible and supported by third-party testimony. *Werner*, 410 B.R. at 810–12. In *Paulsen*, the court found the debtor's testimony explaining the reasoning for the transfer to be vague and speculative. *Paulsen*, 640 B.R. at 161. The *Werner* court held that the plaintiff had not satisfied its burden and was not entitled to avoid the transfer while the *Paulsen* court found that the trustee had satisfied his burden and ordered that the transfer was avoided.

Here, the Defendants have admitted that there are no estate documents in place.

The Debtor's testimony also offered little as to an alternative intent with respect to the Transfer. Even Pamela's testimony offered little as to the Debtor's intent, she spoke only of her intent as she gained advice from Lloyd without the Debtor being present. The Debtor provides no other reason. He also does not deny that it was his intent, only stating that he does not remember. There is simply not enough to overcome the circumstantial evidence adduced by the Trustee.

The Trustee has therefore satisfied his burden by proving that the Debtor effectuated the Transfer with the sole intent of paying debts that existed at the time of the Transfer. Judgment will be entered in favor of the Trustee on Count I and the Transfer is avoided.

As the Trustee has succeeded on Count I, Counts II and III are dismissed as moot as they seek the same relief awarded in Count I. Having succeeded on Count I, the Trustee obtains no further benefit in succeeding under Counts II and III. *In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir. 1994). The court will, therefore, proceed directly to Count IV.

  2.  *Count IV*

As judgment will be rendered in favor of the Trustee avoiding the Transfer under Count I of the Complaint, the Trustee's request to recover the avoided Transfer is ripe.

Section 550(a) provides, in pertinent part:

> [T]o the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from … the initial transferee of such transfer or the entity for whose benefit such transfer was made ….

11 U.S.C. § 550(a)(1).

Recovery under section 550 is not, however, a necessary second step following avoidance. It is only necessary if avoidance alone is an insufficient remedy. *In re Berg*, 387 B.R. 524, 569 (Bankr. N.D. Ill. 2008) (Schmetterer, J.), *abrogated on other grounds by In re Crane*, 742 F.3d 702 (7th Cir. 2013). The remedy of avoidance is adequate, for example, for a non-possessory mortgage interest. *Id.* (relying on *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 425–29 (6th Cir. 2003)).

Here, the Defendants are the only parties with ownership and possessory interests in the Property prior to and remain after avoidance of the Transfer. Only how title to the Property is held has changed. As the Debtor's interest in the Property became property of the bankruptcy estate upon commencement of the above-captioned case, 11 U.S.C. § 541(a), that interest is already subject to the Trustee's administration. Pamela's interest remains hers even after avoidance, as only the

legal status of her interest has changed.  That interest may be sold under the conditions set forth in the Bankruptcy Code, *see, e.g.*, 11 U.S.C. § 363(h), but avoidance of the transfer does not give the estate the right to that interest directly.  As a result, no recovery under section 550 is necessary or appropriate.

Count IV of the Complaint affords the Trustee no further relief or benefit under the facts of the case at bar, *Envirodyne Indus.*, 29 F.3d at 303, and is therefore moot.

     3.     *Count V*

As noted, under the conditions set forth in the Bankruptcy Code, the Trustee may sell Pamela's interest in the Property as well as the Debtor's in order to recover the Debtor's interest in the Property thus sold.  11 U.S.C. § 363(h); *Chatz v. Alice Rhoads Living Trust Dated June 1, 2012* (*In re Rhoads*), 572 B.R. 905, 912–13 (Bankr. N.D. Ill. 2017) (Barnes, J.).

Section 363(h) states, in pertinent part, that:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).  As the court said in *Chatz*,

> [i]n general terms, section 363(h) allows a trustee to sell both the estate's interest and the interest of any co-owner in property where the debtor had an undivided ownership interest, such as a tenancy in common, joint tenancy, or tenancy by the entirety. *Brown v. Phillips* (*In re Phillips*), 379 B.R. 765, 795 (Bankr. N.D. Ill. 2012) (Squires, J.).  The burden of proving section 363(h)(1)–(4) rests on the Trustee. *Id.*  However, once the Trustee establishes a *prima facie* case that the estate would benefit from the sale of the [] Property, the burden shifts to the Defendants to show why the court should not approve the sale. *See Gazes v. Roswick* (*In re Roswick*), 231 B.R. 843, 847 (Bankr. S.D.N.Y. 1999).

*Chatz*, 572 B.R. at 912–13.

18

At the Trial, the court granted the Defendants' motion for judgment on partial findings as to Count V because the Trustee had failed to satisfy the elements of section 363(h). As no judgment has yet been entered, the Motion to Reopen has the potential of affecting that outcome.

In granting in part the Motion to Reopen the court accepts via judicial notice that: (i) a mortgage was recorded by Citifinancial Services, Inc., in November 2007 against the Property; (ii) the same mortgage was assigned from Citifinancial Services, Inc., to Wells Fargo Bank, N.A., in June 2010; (iii) the same mortgage was released in November 2021; and (iv) the Property is a single-family residence occupied by the Defendants and would realize significantly less for the estate than the sale of only the Debtor's interest.

In light of these additional facts, the first two elements of section 363(h) have been satisfied. The Motion to Reopen does not move the needle with respect to the Trustee's satisfaction of the third and fourth elements, though.

The Trustee has not provided the court with evidence through the Trial or through the Motion to Reopen that establishes that the benefit of the sale of the Property of both of the Defendants' interests outweighs the harm to Pamela. The only evidence of that element was presented by the Defendants when Pamela testified that their family would be devastated if the Property would be sold as they would not be able to find a comparable home and they would not be able to get a mortgage. The evidence clearly establishes that the Debtor's extended family lives in the Property and their forced relocation would be equally devastating. Thus, the Trustee has not satisfied the third element of section 363(h).

Further, in ruling on the Motion to Reopen, the court held that it could not take judicial notice of whether the Property was used in the sale of electricity or gas. As the court has no evidence that addresses the fourth element of section 363(h), the court holds that the Trustee has not satisfied his burden with respect to the same.

For all of these many reasons, the court finds that the Trustee has not satisfied his burden with respect to Count V and judgment is proper in favor of the Defendants.[13]

B.   The Exemption Objection

As the avoidance of the Transfer results in title to the Property being held by the Defendants as joint tenants, the Exemption Objection is ripe. The Debtor's Schedule C indicates that the Debtor claims a 100% exemption in the Property under 735 ILCS 5/12-112 as the Property is held in tenancy by the entirety. That is no longer the case. As a result, the exemption is improper and the Exemption Objection will be sustained.

---

[13]   As the court noted at the Trial when granting the motion for judgment on partial findings, succeeding on avoidance but not under section 363(h) does not leave the estate without remedy. The estate can arguably record a lien against the Property in the amount of its unsold interest, thus allowing the estate's interest to be preserved while respecting Pamela's right to remain in the Property.

CONCLUSION

By separate order entered current herewith, the Motion to Reopen will be GRANTED insofar as the court takes judicial notice of the facts that a mortgage existed on the Property but has been released, the Property cannot be partitioned and that a sale of the Debtor's interest only in the Property would realize significantly less than the sale of both of the Defendants' interest in the Property. In all other respects, the Motion to Reopen will be DENIED. As for the Complaint, judgment in favor of the Trustee on Count I and in favor of the Defendants on Count V will be entered. Counts II–IV of the Complaint will be dismissed as moot. Finally, the Exemption Objection is SUSTAINED.

Dated: March 29, 2024                               ENTERED:


_____
Timothy A. Barnes
Judge
United States Bankruptcy Court

20